UNITED STATES of America ex rel. Edward F. LaBELLE, Petitioner-Appellant,

v.

Hon. Vincent MANCUSI, Warden of Attica State Prison, Attica, New York, Respondent-Appellee.

No. 209, Docket 31404.

United States Court of Appeals Second Circuit.

Argued Dec. 3, 1968.

Decided Dec. 3, 1968.

Jeffrey A. Barist, New York City (Anthony F. Marra, New York City, on the brief), for petitioner-appellant.

Lillian B. Cohen, New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., and Brenda

Soloff, Asst. Atty. Gen., on the brief), for respondent-appellee.

Before LUMBARD, Chief Judge, FRIENDLY, Circuit Judge, and RYAN, District Judge.*

LUMBARD, Chief Judge:

The petitioner, Edward F. LaBelle, confined to Attica State Prison following his conviction in Rensselaer County Court for a rape and murder committed on November 28, 1963, appeals from the denial of his petition for a writ of habeas corpus by the District Court for the Western District of New York. The recent decision of the Supreme Court in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), which the Court subsequently made retroactive in Roberts v. Russell, 392 U.S. 293, 88 S. Ct. 1921, 20 L.Ed.2d 1100 (1968), leaves us no alternative but to direct the issuance of the writ unless within a reasonable time the State retries LaBelle. Although we indicated in open court that the order of the district court must be reversed, the importance of the case and the heinous nature of the crimes for which petitioner was convicted require a statement of our reasons.

Edward F. LaBelle was tried jointly with his brother, Richard, for the rape and murder of a 15-year-old girl named Rosemary Snay. It was the prosecution's theory that the murder was committed on November 28, 1963, between the hours of 8:00 and 11:00 P.M. The state court record shows that although there were no eye witnesses to the crime, testimony was introduced which showed that the brothers were seen together between 7:00 and 8:00 P.M. on that day, that Edward was seen talking to the girl during that time, and that the girl was last seen being followed by the brothers in their automobile. Another witness testified that the brothers were together at approximately 10:45 P.M. of that day. In addition, physical evidence—including blood samples, pieces of clothing and hair—was introduced which showed that the girl had been in the car. A hatchet and crowbar discovered in the trunk of the car were found to have human blood and hair on them which corresponded with the blood type and hair of the victim.

Neither brother testified at trial. However, a written statement made by Richard after his arrest, and held to be voluntary in a pre-trial *Huntley* hearing in the county court, was read into evidence after redactions were made. In addition, witnesses testified as to oral statements made by Edward at the time of his arrest. These statements were also the subject of a *Huntley*-type hearing and also found to be voluntary, despite a delay of twenty hours between arrest and arraignment.

■ Petitioner's counsel, relying on Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), claims that even as redacted the admission in evidence of Richard's statement was so prejudicial as to require the reversal of Edward LaBelle's conviction, despite the fact that the jury was charged that the statement was not evidence against Edward. We must reluctantly agree.

In *Bruton* admissions made by one defendant were introduced at trial, but the jury was instructed not to consider these admissions in determining the guilt of a co-defendant. The Supreme Court reversed the conviction of the co-defendant, holding that he had been denied his Sixth Amendment right to confront and cross-examine an adverse witness because of the failure of the confessing defendant to take the stand. The Court concluded that it was not realistic to assume that the limiting instructions had removed the inculpating confession from the minds of the jurors as they considered the non-confessing defendant's guilt.

In our case Richard's confession was redacted with the intention of removing those portions which were inculpatory to Edward. Since *Bruton* left open the pos-

* Sitting by designation.

sibility that a confession could be sufficiently redacted to remove any prejudice to a co-defendant the state asks us to affirm the denial of the writ, and thus require petitioner to submit initially to the state courts the question of the applicability of *Bruton* to the facts of this case.

After a careful examination of the version of Richard's confession which was admitted at trial we conclude that there is no reasonable doubt that it was inculpatory as to Edward, and this necessitates the reversal of his conviction under *Bruton*. One example should be sufficient to illustrate this point. Richard's full confession to the police stated that at the scene of the murder Edward had walked around to the side of his car where the Snay girl was standing. The confession continued:

> "At this time I saw EDDIE lift his right arm up over his head and I could see he had something in his right hand but I diden't [sic] know what it was he was holding at this time. Then I saw EDDIE hit the girl in the head with whatever it was he had in his right hand. I saw the girl fall and I yelled EDDIE * * *." Petitioner-Appellant's Appendix, part E, p. 26.

In the redacted confession admitted at trial the location of the Snay girl was noted, and then there occurred this passage:

> "Omission. 'I saw the girl fall' Omission." Petitioner-Appellant's Appendix, part F, p. 1203.

Thus the explicit reference to Eddie striking the death blow had been excised. But it was clear to the jury from the rest of the confession, and from the other evidence introduced at trial, that Richard

and Eddie had been alone in their car with the Snay girl just before the death blow was struck. Thus the jurors had to conclude from the redacted confession that either Eddie or Richard, or both, committed the murder.[1] The inculpatory nature of the confession as applied to Edward is not fairly subject to dispute.

While we would much prefer to have questions concerning the application to state cases of precedent-breaking criminal decisions reviewed initially by the state courts, whose responsibility and duty it is to do so, it is abundantly clear that no purpose would be served by further delay in this case since the result is certain, namely that the conviction cannot stand. Indeed any further delay, with the danger that evidence and witnesses introduced at the first trial will become unavailable, might only make more difficult the task of the county prosecutor in retrying the case. We emphasize that were there any matters for resolution which might lead to a result other than reversal we would follow the procedure of requiring the district court to defer action until a reasonable time had been allowed for the state courts to further hear and determine the remaining issues. See Jackson v. Denno, 378 U.S. 368, 395–396, 84 S.Ct. 1774, 12 L. Ed.2d 908 (1964).

As the admission of Richard's statement requires reversal there is no need for us to pass upon the other issues raised regarding the search and seizure of the automobile and the admission of certain oral statements made by the petitioner himself.

We commend Jeffrey A. Barist for the capable and thorough manner in which he has discharged the duties of assigned counsel.

---

1. The New York Court of Appeals reversed Richard's conviction because his confession as admitted at trial was so redacted that the portions which tended to exculpate Richard did not reach the jury. People v. LaBelle, 18 N.Y.2d 405, 276 N.Y.S.2d 105, 222 N.E.2d 727 (1966). Of course if Richard and Edward had been tried separately the use of the confession could have been admitted at Richard's trial, thus giving him the benefit of its exculpatory portions, and none of it would have been admitted at Edward's trial, thus avoiding the danger of prejudice the Supreme Court was concerned about in *Bruton*.

■ The order of the district court is reversed. However, the district court should stay the issuance of the writ of habeas corpus until the state has had a reasonable opportunity to retry the petitioner.