IRA ROGERS *v.* STATE OF INDIANA.

[No. 277S132. Filed May 12, 1978.]

*Dennis R. Kramer,* of Crown Point, for appellant.

*Theodore L. Sendak,* Attorney General, *Daniel Lee Pflum,* Deputy Attorney General, for appellee.

PIVARNIK, J.—On October 16, 1976, appellant Rogers was found guilty by a jury in the Lake Superior Court of first-degree murder and murder in the perpetration of a robbery. He was sentenced to life imprisonment. The case in question involves the robbery, on February 23, 1976, between nine and ten in the evening, of Mona's Lounge in Gary, Indiana, by a group of young black men. One of the young men pulled out a gun and stated, "This is a stick-up, everybody on the floor." One David Clay then fell to the floor, and while he was on his back he drew two weapons and started firing shots toward the front of the lounge. Witnesses testified that there were from five to fifteen shots fired in a period of ten to fifteen seconds. Then the young black men left, without obtaining any money or goods in the attempted robbery. David Clay was found lying on the floor and dead of gunshot wounds, with a .32 caliber pistol in his right hand, and with a .22 caliber pistol near his leg.

Appellant, who was tried jointly with three other co-defendants, raises three questions for review: (1) did the trial court effectively delete the statements of co-defendants Lorenzo Stone and Johnny Williams when the court replaced their names with blank spaces; (2) did the trial court's over-

ruling of the appellant's motions to sever, both prior to trial and during trial, deny the appellant a fair trial and subject him to undue prejudice, and; (3) did the trial court commit error by not restricting impeachment evidence of state's witness Elliott James.

## I.

It developed that five young men took part in the robbery in question, and that four of them were being tried jointly in this action. One Elliott James had also taken part, but had plea bargained with the state and was to testify as a state's witness in the present case.

Two statements, of co-defendants Lorenzo Stone and Johnny Williams, were admitted into evidence with instructions by the court that the evidence was to be used only against the person giving the statement, and not against any of the other defendants. Stone gave two statements to the police after having been given his rights and advices by the police, and after waiving those rights on February 25, 1976. In the first statement he said that he was a customer in Mona's Lounge and observed the robbery by these young men. In his second statement, given only about an hour later, he admitted that he lied in his first statement. Stone then stated that he was, as a matter of fact, one of the participants and admitted his participation in the robbery. Where he mentioned the names of others involved with him, the court substituted the word "blank" rather than the name. Where Stone referred to the number of participants involved, the word "blank" was also used, rather than such number. The same procedure was used with the statement of co-defendant Johnny Williams, which was given on February 24, 1976, in which Williams admitted his participation in the robbery. Neither Stone nor Williams testified at the trial. Appellant Rogers claims that he was prejudiced by the admission of these statements by the trial court. He argues that from merely putting references in blanks, rather than the names or numbers, it could be presumed that those blanks would name the defendants

in court, and virtually point the finger at them as much as if they had actually been named in these statements.

Appellant has likened the situation in this case to that of *Sims* v. *State,* (1977) 265 Ind. 647, 358 N.E.2d 746. In the *Sims* case, however, there were only two defendants being jointly tried, and each of their confessions pointed to the other as the actual perpetrator of the death blows. Furthermore, the confessions were the only evidence against either defendant in the entire trial. Justice Arterburn pointed out in the *Sims* opinion that there could be no doubt that the witnesses were at all times talking about each other, and about the only parties before the court. Thus, the admission into evidence of the two statements in effect was an admission of evidence by each co-defendant against the other. Further, such evidence was the only evidence tying either defendant to the actual act of the commission of the crime. In this case, however, both Stone and Williams only refer to other participants by nicknames, and then only casually in telling the incidents in the crime. The narrative given by each is a very general account in relation both to the incident and to the involvement of the one giving the statement. There is no indication that the purpose of either Stone's or Williams' statement is to point the finger at someone else or at the other perpetrators. Since the number involved is so large, the insertion from time to time of "blank" does not necessarily incriminate anyone. The blanks could just as well be assumed to be naming Williams and Stone in each other's statement, since the use of the term "blank" does not necessarily incriminate any particular person.

Further, it appears that there was a great deal of evidence against the appellant, other than any which might be attributed to these statements, that justified his conviction by the jury. The appellant was identified by an eyewitness in the lounge at the time. He was also identified, by a bullet that was removed from his arm, as being involved in the shooting. The appellant stated to the police

and those at the hospital that he had been shot at 4th and Jackson, which is the location of the shooting in the cause. There is no record of any other shooting at 4th and Jackson on that date. Further, a Gary police officer testified that the appellant had admitted to him that he was at Mona's Lounge that night. Therefore, it does not appear either that the admission of these statements unduly prejudiced the appellant, or that it was reversible error to admit them. *Carter* v. *State*, (1977) 266 Ind. 140, 361 N.E.2d 145.

## II.

Prior to the trial the appellant filed a motion for a separate trial, on the grounds that he was a minor. He stated that he would be prejudiced in being tried jointly with these others, as he did not have the capacity to understand the influences his co-defendants would have on him. The court overruled this motion to sever and ordered the defendants tried jointly. At other points during the trial, and more particularly after the statements of Stone and Williams were admitted into evidence, appellant again moved the court for severance of this trial.

Appellant now cites the court to Ind. Code § 35-3.1-1-11 (Burns 1975), which provides in pertinent part:

"(b) Whenever two (2) or more defendants have been joined for trial in the same indictment or information and one or more defendants move for a separate trial because another defendant has made an out-of-court statement which makes reference to the moving defendant, but is not admissible as evidence against him, the court shall require the prosecutor to elect one (1) of the following courses:

"(1) a joint trial at which the statement is not admitted into evidence;

"(2) a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been effectively deleted; or

"(3) granting the moving defendant a separate trial. In all other cases, upon motion of the defendant or the prosecutor, the court shall order a separate trial of defendants whenever the court determines that a separate trial

is necessary to protect a defendant's right to a speedy trial or is appropriate to promote a fair determination of the guilt or innocence of a defendant."

It is apparent from the language of the statute that the granting of a separate trial to a defendant is within the sound discretion of the trial court, using the guidelines set out in section (b) (3) of the statute. We have already disposed of the effectiveness of the deletion of the statements put into evidence in this cause. Further, however, this issue was not presented to the trial court in the manner in which it is presented here. The motion for separate trial did not raise the issue of the statements of co-defendants. There was no time when the state was given an option or opportunity to make the election required in the statute. It is clear, therefore, that the interposition of the protections of this statute was raised as an afterthought in this appeal. In view of the evidence of appellant's guilt that we have related above, in issue I, *supra,* and which has no relationship to the other defendants, we cannot say that the trial court abused its discretion or thereby prejudiced appellant by requiring him to be tried jointly with the other defendants.

### III.

One Elliott James was also charged along with the defendants in this case, but was not being tried jointly with them because he had already entered a plea of guilty and had been sentenced on a plea bargain arrangement with the state. As a result of such agreement, he was to testify against the remaining defendants for the state. James did take the stand, but on questioning from the prosecuting attorney stated that he was not involved in this incident and knew nothing about it. He stated that both his previous statement given to the police and his statement given in open court at the time of his sentence were false, and were made by him out of fear of threats made to him by the police. The court found witness James to be hostile to the state, and permitted the state to put into evidence his previous statements.

The trial court relied on the authority of *Patterson* v. *State,* (1975) 263 Ind. 55, 324 N.E.2d 482. In that case, this court held that a statement was admissible on the ground that the out-of-court asserter was in court and available for cross-examination as to the statement. In this case, Elliott James was on the stand and admitted giving both previous statements, and was in fact cross-examined by this appellant. Appellant was therefore not denied his right of confrontation, as James did not refuse to testify but rather answered all questions asked of him by the state and all four defendants. The trial court was thus correct in admitting the former statements of James into evidence.

The judgment of the trial court is affirmed.

Givan, C.J., Hunter, J., concur; DeBruler, J., concurs in result with opinion; Prentice, J., disseents with opinion.

### OPINION CONCURRING IN RESULT

DeBRULER, J.—I agree with my Brother Prentice that a *Bruton* violation occurred when the statments of co-defendants, Stone and Williams, were admitted into evidence and appellant, Rogers, was unable to cross-examine them due to the fact that such co-defendants did not take the witness stand and testify. The statements as redacted were clearly inculpatory when considered in connection with the statement of James who had participated in the crime and whose statement was admitted at trial. That statement of James described the events of the crime by place and time and stated that the crime had been committed by James, Barber, Rogers, Stone and Williams. The statements redacted describe the events of the crime as being at the same time and place, but identified the perpetrators of the crime as having been a group of an unspecified number. The jury was presented at the trial with the five persons comprising the group as described by the James statement, namely, James himself, and the four on trial at the time, including Rogers. The jury would, therefore, have

inferred that the group referred to in the redacted statements included the appellant, Rogers.

However, unlike my Brother Prentice, I consider the violation of appellant's confrontation rights to be harmless beyond a reasonable doubt. The United States Supreme Court found a *Bruton* violation harmless beyond a reasonable doubt in *Harrington* v. *California,* (1969) 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284, under circumstances very similar to those before us. The evidence recited at the end of Section I of the majority opinion serves to support this conclusion.

I likewise concur in result because there is a separate and identifiable issue in my view which relates to the denial of the motion for a separate trial. The motion was based upon his contention that he would be prejudiced by being required to join in the peremptory challenges allotted to the defendants and limited to ten in number under Ind. Code § 35-1-30-2 (Burns 1975). In order to avoid this effect, appellant sought severance, the remedy suggested by this Court in *Martin* v. *State,* (1974) 262 Ind. 232, 317 N.E.2d 430 (on rehearing). A motion on this basis should be denied absent a showing by the movant of a substantial and significant interest implicated by the jury selection process which is not also held by co-defendants. Here no such showing was made and the motion was therefore properly denied.

## DISSENTING OPINION

PRENTICE, J.—I dissent from Justice Pivarnik's majority opinion upon Issue I.

This case involves four defendants tried jointly. Two defendants had given written statements referring to themselves and the others involved (five in all). These defendants did not testify. The court admitted the statements in evidence, over the defendant's objection, but after first deleting therefrom the references, by name, to the defendants other than the declarant. These deletions simply left a blank where a name had been used by the declarant.

(1) In *Sims* v. *State*, (1977) 265 Ind. 647, 358 N.E.2d 746, we expressly held such redactions to be ineffective as against a claim of unconstitutional denial of the right of confrontation. Justice Pivarnik has distinguished this case from *Sims* upon the basis that in *Sims* there was but one co-defendant and one third-party reference in the statement, whereas here, there were three co-defendants and several third-party references. He reasoned that under such circumstances the occasional substitution of a blank for a name could not be inferential of any particular person. This is correct, but I am unable to agree that the problem is thereby solved.

Justice Arterburn said in *Sims*, "It strains the limits of common sense to suggest that the simple deletion of a name and/or substitution of the letter 'X' can act as an 'effective' deletion in a case such as here. The appellants were jointly indicted and jointly tried. The confession of each defendant refers to the declarant and another person. The jury can draw only one inference—that the other person in each confession is the declarant's codefendant." 358 N.E.2d at 748.

To me, the potential for harm is increased, rather than decreased, by the vagary as to whose name might have been deleted. The jury, nevertheless, is most likely to infer that it was a co-defendant. Thus, each blank subjects each co-defendant to an inference of involvement, and the potential for harm increases proportionately as the number of blanks and the number of co-defendants increase.

My convictions in regard to the admission of redacted statements were summarized in *Carter* v. *State*, (1977) 266 Ind. 140, 361 N.E.2d 145, as follows:

"In holding that the deletions made by the trial court were not 'effective' we have regard for the policy pronounced in Bruton v. United States, supra, and that is that a co-defendant shall not be tainted by the out-of-court declarations of a non-testifying defendant. In protecting this right of confrontation, we cannot permit references by logical inference that could not be made directly. Because of the context in which the out-of-court statements are to

be used, i.e. in a trial of two or more defendants wherein all are charged with the same offense, it will require more than a fig leaf to shield the non-declarants from the declarations of a declaring co-defendant. In consequence, there probably will be but few such statements that are susceptible to effective deletion within the meaning of the statute. Where such effective deletion is not clearly possible, due regard being had for the context in which the statement will be used and the normal inclination of a jury to associate a declarant's co-defendants with pronouns or blanks or other vagaries in the edited version, the state must be left to choose between separate trials or foregoing the use of the coveted statement. In the following cases, the Court held that the redaction was ineffective because of the almost inevitable association of the appellant with the nontestifying declarant, under the circumstances of the case. United States ex rel. La Belle v. Mancusi, (1968, CA 2 N.Y.) 404 F.2d 690; Serio v. United States, (1968) 131 U.S. App.D.C. 38, 401 F.2d 989." 361 N.E.2d at 148.

(2)   Nor do I agree that this error was harmless, in view of other substantial evidence of guilt. In *Carter* v. *State, supra,* our holding was that such errors could be harmless and, in the context of that case, were harmless. Both defendants had given statements which would have been admissible in his separate trial. There were no conflicts in the statements, and neither defendant charged the other with any act not fully confessed by the other. We said:

"* * * Given the testimony of the two eyewitnesses and the confession of either of these defendants in a separate trial, a jury could not have properly done other than convict. Under these circumstances, we have no hesitancy in declaring that the improper admission of the redacted statements was harmless error beyond a reasonable doubt." 361 N.E.2d at 148, 149.

The error in admitting the redacted statements was of constitutional dimension in that it denied the right of confrontation. Therefore, if we are to hold it to be harmless, we must find it so beyond a reasonable doubt. To quote again from *Carter,*

"* * * To us, there is a vast difference between evidence that is ample, that is to say evidence that would prevail

upon review over a claim of insufficiency, and evidence that is so convincing that a jury could not properly find against it. When we find the latter, we are warranted in a determination that error was harmless beyond a reasonable doubt." 361 N.E.2d 148.

I would reverse and order a new trial.

NOTE.—Reported at 375 N.E.2d 1089.