Daniel E. CORNELIUS, Appellant,

v.

STATE of Indiana, Appellee.

No. 780S216.

Supreme Court of Indiana.

Sept. 3, 1981.

Harry W. Hanson, Washington, for appellant.

Linley E. Pearson, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

Appellant was convicted by a jury of attempted rape and two counts of criminal confinement. Having found aggravating circumstances, the trial court sentenced appellant to a term of twenty years and fined him $1000 for the attempted rape conviction. The convictions for confinement were consolidated. Appellant was sentenced to four years of imprisonment for the confinement convictions, to be served concurrently with the twenty-year term.

Appellant and his wife were arrested for the attempted rape of the victim. The details of the crimes charged are set out in this opinion as they relate to the various allegations of error raised by the appellant. Appellant was tried separately from his wife.

■ Appellant claims the trial court erred by admitting testimony regarding events which occurred on two previous encounters between the victim and appellant. The victim and her mother testified concerning their first encounter with the appellant which led to the crimes charged. During that encounter appellant stated he wished he were ten years younger so he could date the victim and that he wanted to have eight wives. He also asked his ten-month-old son if he liked his "new mamma" as the child sat on the victim's lap. He further mentions removing their clothes and showering together. The victim also testified that during the second exchange, appellant behaved unusually by going in and out of his trailer to his car. The victim recounted a conversation with the appellant in his bedroom, at his request, where he moved close to her and asked if she were afraid.

Appellant claims this evidence served only to prejudice him in the eyes of the jury. The State argues this testimony was admitted to show appellant's intent toward the victim.

In *Bertram v. State*, (1978) 268 Ind. 368, 375 N.E.2d 1098, testimony about appellant's actions and words earlier in the day of the murder was held to be admissible. In that case, this Court stated at 268 Ind. 370, 375 N.E.2d at 1098, 1099:

"Any evidence tending to prove a material fact is admissible even though its tendency in that direction may be slight. *Pirtle v. State*, (1975) 263 Ind. 16, 323 N.E.2d 634. All circumstances relative to or tending to shed light on the intent or motive of the defendant or tending fairly to explain his actions, are admissible even though they occurred prior to the crime. *Fausett v. State*, (1942) 219 Ind. 500, 39 N.E.2d 728. It was proper to submit the tendered testimony to the jury in order that they might determine whether or not such evidence tended to explain appellant's hostility toward the [victim] .... It was within the province of the jury to determine whether these facts were pertinent to establish appellant's motive and intent and rebut his testimony .... The trial court did not err in overruling appellant's objection to the testimony."

Under the circumstance of this case, it was proper for the trial court to overrule the objection to the questioned testimony for the reason that it tended to explain appellant's intent, motive and actions. The weight to be attached to such testimony was within the province of the jury.

Appellant claims the verdict of attempted rape was not sustained by sufficient evidence. Appellant claims the difference between the crime of battery and rape is penetration. He thus reasons that a substantial step toward penetration must occur before a conviction for attempted rape can stand. He argues he never removed his clothes, made an oral demand for intercourse, nor threatened the victim with a weapon.

Appellant cites *Himes v. State*, (1980) Ind., 403 N.E.2d 1377 to support his argument that specific intent was lacking. In the *Himes* case, the conviction for attempted rape was affirmed. He contends *Himes* and the case at bar are distinguishable because there was no weapon nor words of specific intent in the case at bar; whereas, in *Himes*, appellant was armed with a gun. Himes did not articulate his intentions further than to say, "You know what I want." He then lunged at the victim and grabbed the front of her slacks. This Court held that in *Himes*, the appellant acted with the culpability required. In addressing the issue of whether a substantial step toward carrying out his intent had occurred, the Court held once intent had been established, the appellant's actions of following the women involved, obtaining a weapon, pointing the weapon at the victim, and making his statement above quoted was sufficient to support the jury's verdict. In the case at bar, following the initial encounters above referred to, appellant's wife asked the victim and her mother if the victim could come to her home and help with cleaning. Knowing that the victim was not to go to appellant's trailer if he were home, appellant's wife told the victim and her mother that appellant was gone for the day. When the victim was putting clothes away in the nursery, appellant appeared in the doorway, clad only in blue jeans, and stated, "Ha, ha,

you have been tricked." Victim and appellant's wife went into the bedroom to change the sheets. Appellant's wife left the room to presumably wash dishes. At that time, appellant "put a bear hug" on the victim. He then pulled the victim onto the bed. While laying on her, he held her arm behind her back, unzipped her jeans, tried to put his hand down her pants and up her blouse. As the victim screamed for appellant's wife to help her, he smothered her with a pillow to silence her. When appellant's wife eventually appeared, the struggle ceased. Appellant stated to his wife that he believed that she was going to have the victim there with her clothes off. His wife's reply was "Well, I got her over here, didn't I?". The appellant then threatened to seriously harm the victim and her brother should she reveal any of the events.

We do not believe the facts of the *Himes* case and the case at Bar are distinguishable for the purposes of the decision here. Although appellant in the case at Bar did not threaten the victim with a gun, as in *Himes*, he nevertheless used force. No specific words demanding sexual intercourse were spoken in either case. Neither appellant had removed his clothing.

■■■ Under our standard of review for sufficiency of the evidence, we do not weigh the evidence or judge the credibility of the witnesses. Looking only to the evidence most favorable to the State, together with all reasonable and logical inferences drawn therefrom, we will not disturb the jury's verdict if there is substantial evidence of probative value to support their determination. *Himes, supra.* The facts above recited were sufficient to support the inferences made by the jury in arriving at their determination that a substantial step had been taken in an attempt to rape the victim.

■■■ Appellant next claims the trial court erred in denying his motion for change of venue. He argues publicity by local newspapers and radio stations so prejudiced the community as to deny him a fair trial. The State counters that no question has been

placed before this Court because the articles and reproductions that are the source of the alleged prejudice were not included in the record.

In *Hall v. State*, (1980) Ind., 405 N.E.2d 530 we addressed this issue. This Court stated at page 533:

"[D]efendant has not presented this Court with a sufficient record to permit review of the publicity. He has not included in the record any of the newspaper articles, or copies of them, alleged to have prejudiced the jury. Since it is the duty of the defendant to make a proper record, this failure bars this Court's consideration of them."

We therefore, decline to address appellant's contention.

Appellant claims the trial court erred by excessively sentencing him. He specifically alleges the trial court erred in failing to find the cessation of the rape attempt to be a mitigating factor. He additionally argues that because aggravating circumstances were found, the sentence "did not receive all the counter balance the law requires."

■ I.C. 35–50–1–1 [Burns 1979] vests in the trial court judge the authority to sentence a defendant convicted of a crime. I.C. 35–50–1A–7 [Burns 1979] sets forth criteria to be utilized in sentencing. I.C. 35–50–1A–7(a) dictates that a trial judge "shall consider the risk that the person will commit another crime, the nature and circumstances of the crime committed, and the prior criminal record, character and condition of the person." I.C. 35–50–1A–7(b) and (c) list mitigating and aggravating circumstances respectively that the trial court may consider. A finding of mitigating factors is therefore discretionary.

■ In addition we find no merit in appellant's proposition that the cessation of the rape attempt should be deemed a mitigating factor. Appellant released the victim who had been resisting only upon the intervention of his wife. Moreover, upon releasing the victim he threatened her and her brother. It was within the province of the trial judge to determine whether there had been a voluntary cessation of actions on the part of the appellant which would constitute mitigating circumstances. We find no abuse of such discretion from this record.

■ Appellant claims the trial court erred in denying his "Motion for Permission to File Notice of Plea of not Guilty by Reason of Insanity." He argues the trial court's failure to grant the motion denied him his right to a fair trial.

I.C. 35–5–2–1 states:

"When the defendant in a criminal case intends to interpose the defense of insanity, he must file a notice of that intent with the trial court within thirty [30] days after entry of a plea of not guilty. However, in the interest of justice and upon a showing of good cause, the court may permit the filing to be made at any time before commencement of the trial."

Appellant's motion was made well after the thirty day period provided by statute. It was therefore within the trial judge's discretion to grant the motion upon a showing of good cause.

During appellant's incarceration between his arrest and trial, he escaped from the jail on two occasions. Although the record does not so state, the appellant in his brief admits the trial judge appointed two psychiatrists in the second escape case to examine him. Their findings were that the appellant was sane and did not have a mental disease or defect at the time of the second escape.

During the hearing on the motion the defense attorney claimed he had observed his client over the course of time and concluded that an insanity defense was justified.

In view of the prior psychiatric examination, we hold the trial court did not arbitrarily sever appellant's rights to a fair trial by denying his motion.

The trial court in all things is affirmed.

All Justices concur.