Chris **NICHOLSON** and Norman **Baker, Appellants– Defendants,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 48A02–0108–CR–533.

Court of Appeals of Indiana.

June 4, 2002.

Shawn Ramsey, Anderson, IN, Attorney for Appellants.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

Norman Baker and Chris Nicholson (collectively "the defendants") appeal their convictions of attempted escape, Class C felonies.[1] They raise four issues, which we restate as three:

1. Whether the trial court erred in denying the defendants' respective motions to dismiss due to Criminal Rule 4 violations;

2. Whether the testimony of accomplice Glen Carnahan was properly admitted at trial; and

3. Whether the State presented sufficient evidence to support the convictions of attempted escape.

We affirm.

## FACTS[2] AND PROCEDURAL HISTORY

In August of 1998, Baker and Nicholson were incarcerated in the Madison County Jail. Baker called his brother, Carnahan, and instructed him to contact Michael McNeil, a lay minister who regularly visited Nicholson. Baker told Carnahan to ask McNeil to take Nicholson some Christian magazines. Carnahan did so, telling McNeil that he was "John Cunningham." McNeil noted that his caller ID showed the call from "Cunningham" originated from Baker's home telephone.

Carnahan dropped off a brown padded envelope at McNeil's house. McNeil noted that the envelope was sealed. When he opened it, he found Christian magazines, but also noticed the envelope had a strange smell and went "clank" when he set it down. (R. at 268.) Upon further examination, he found a hacksaw blade and two baggies of what appeared to be tobacco. McNeil contacted the police.

Baker and Nicholson were charged separately with attempted escape. At his ini-

---

1. Ind.Code § 35–41–5–1 (attempt); Ind.Code § 35–44–3–5 (escape).

2. The defendants' Statement of Facts consists primarily of a witness-by witness summary of the testimony at trial. The Statement of Facts thus does not comply with our rules, which require a narrative and fair statement of the facts devoid of argument, and not a summary of the testimony of each witness. *Red Arrow Ventures, Ltd. v. Miller,* 692 N.E.2d 939, 941 n. 1 (Ind.Ct.App.1998), *trans. denied* 706 N.E.2d 169 (Ind.1998). "We have stated repeatedly that a summary of the witnesses'

testimony is not a statement of the facts within the meaning of the appellate rules." *Mitchell v. Stevenson,* 677 N.E.2d 551, 555 n. 1 (Ind.Ct.App.1997), *trans. denied* 683 N.E.2d 594 (Ind.1997). We also note that counsel's Statement of the Case is rife with argument, which is inappropriate in that part of an appellate brief. *See County Line Towing, Inc. v. Cincinnati Ins. Co.,* 714 N.E.2d 285, 289–90 (Ind.Ct.App.1999), *trans. denied* 735 N.E.2d 219 (Ind.2000) (a Statement of the Facts should be a concise narrative of the facts stated in a light most favorable to the judgment and should not be argumentative).

tial hearing and before he had obtained counsel, Baker made an oral motion for a speedy trial. Counsel was appointed for Baker and a trial date was set within the seventy-day time limitation.

Baker's counsel then moved for a continuance of the trial on the basis that he did not have time to adequately prepare for the trial.[3] That continuance was granted. Baker then filed a *pro se* Motion to Dismiss on the ground that he had not been given a speedy trial, which motion was denied. A trial date was set for March 4, 1999, but was taken off the calendar due to court congestion.[4] A new trial date was scheduled for June 24, 1999.

Meanwhile, in Nicholson's case, a jury trial was set for March 9, 1999. On March 1, 1999, a pretrial was scheduled, but the chronological case summary does not indicate that it was held. On March 3, 1999, a "Request for Appointment of Another Public Defender" was filed. (R. at 5.) On March 16, 1999, the State dismissed the charges against Nicholson. On March 26, 1999, the State refiled the charges and made an oral motion to consolidate the Nicholson and Baker trials. On April 28, 1999, a written motion to consolidate the trials was filed, and it was granted on April 30, 1999.[5] Baker and Nicholson were represented at trial by different counsel.

Baker moved to continue the June 24, 1999, trial and the trial was reset to September 16, 1999. Baker then moved to continue that trial date, and the trial was reset to February 15, 2000. Baker moved to continue the February 15, 2000, trial date, and the trial was reset to March 21, 2000. Baker filed a motion to continue that trial date, and the new trial date was scheduled for May 4, 2000. Baker moved to continue that trial date too, and it was finally reset to August 22, 2000. On August 18, 2000, Nicholson filed a Motion for Discharge pursuant to Criminal Rule 4(B), which motion was denied.

## DISCUSSION AND DECISION

### 1. *Criminal Rule 4*

Baker and Nicholson contend the trial court erred when it denied their motions pursuant to Criminal Rule 4(B) and 4(C), respectively. Ind.Crim. Rule 4(B) provides that "[i]f any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion[.]" The rule contains two exceptions whereby a defendant is not entitled to discharge even though the prosecutor or the court fails to bring the defendant to trial within 70 days: (1) the court's calendar is too congested to adjudicate the defendant's case during that time; or (2) the defendant causes the delay.

Baker's seventy day time period would have run on November 3, 1998. His counsel's filing of a motion to continue the October 22, 1998, trial resulted in the waiver of Baker's motion for speedy trial, as the motion for continuance was a request

---

**3.** Although Baker asserts that his counsel did not have authority to move for a continuance, the motion for continuance filed by Baker's counsel states that "[Baker] authorized [his counsel], at his discretion, to seek a continuance of the October 22 trial date if the undersigned could not be adequately prepared for trial by that date." (R. at 82.)

**4.** The chronological case summary reflects that the case congesting the calendar was

*State v. Keith McCotry,* 48D03–9811–CF–534. (R. at 62.)

**5.** The chronological case summary does not indicate that Nicholson or Baker opposed the motion for consolidation. If they did oppose the motion, there was nothing filed with the court and the record includes no transcript of any hearing on the motion to consolidate.

inconsistent with a speedy trial. *See Covelli v. State,* 579 N.E.2d 466, 470 (Ind.Ct. App.1991) (motion for continuance is inconsistent with a speedy trial request.). The trial court did not err when it denied Baker's motion for discharge.

■ With respect to Nicholson's motion brought pursuant to Crim. R. 4(C), he contends that he made a "proper and timely motion to dismiss because of the delay not attributed to himself, his counsel, or trial congestion, but subsequent continuances sought by the state and by his co-Defendant." (Br. of Appellant at 12.) Crim. R. 4(C) provides that a defendant must be tried within one year from the date of arrest or of the filing of the criminal charge, whichever is later, except where a continuance was obtained on his behalf, or where the delay was caused by the defendant. Essentially, Nicholson argues that he should not be held responsible for Baker's multiple motions for continuance.

■ However, Nicholson did not object to the consolidation of the trials, nor did he move to separate his trial from Baker's trial. Further, he did not object to any of the continuances Baker sought. Ind.Code § 35–34–1–11(b) provides that "upon motion of the defendant or the prosecutor, the court shall order a separate trial of defendants whenever the court determines that a separate trial is necessary to protect a defendant's right to a speedy trial...." Thus, where one defendant's motion for continuance takes the trial outside the time limits set by his co-defendant's speedy trial motion and the co-defendant

does not move for a separate trial, the denial of a motion to discharge is not error. *Young v. State,* 176 Ind.App. 32, 373 N.E.2d 1108, 1110 (1978).

Had Nicholson felt that his right to obtain a trial within the parameters of Crim. R. 4 was being violated, he could have requested a separation of the trials. In light of his failure to do so and his failure to object to Baker's multiple motions for continuance, the trial court did not err when it denied Nicholson's motion to dismiss.

### 2. *The Carnahan Testimony*

■ As best we can ascertain, the defendants assert that Carnahan's testimony should not be allowed because he was a co-defendant, and as a result, separate trials should have been granted. However, as noted above, no motion for separate trials was made and any argument there should have been a separate trial is accordingly waived. Further, while a motion in limine as to Carnahan's testimony was made, there was no contemporaneous objection to Carnahan's testimony at trial. As a result, this allegation of error is waived. *Stewart v. State,* 567 N.E.2d 171, 174 (Ind.Ct.App. 1991), *trans. denied* (objection is necessary to preserve an issue for appellate review).

■ Waiver notwithstanding, Carnahan was not a "co-defendant." The defendants cite to "*Sims v. State,* [265 Ind. 647], 358 N.E.2d [746] 748 (1977)" (Br. of Appellant at 10) to support their contention. There is no such case at that page of that reporter.[6] The case to which defendants' counsel apparently refers is *Sims v. State,*

---

**6.** While we acknowledge the possibility that this incorrect citation could have been due to a mere typographical error, we note with concern that counsel subsequently quotes material from the *Sims* decision for which it offers us the pinpoint citation "Id. At 749." (Br. of Appellant at 10.) No part of the *Sims* decision is found on page 749. We also note

that except for the erroneous *Sims* citation, counsel's brief is nearly devoid of pinpoint citations. One of the very few additional pinpoint citations counsel offers us is to a decision he refers to as "*Lipton v. State.*" The decision at the volume and page to which counsel directs us is actually *Liston v. State.* In the text of his argument, counsel attributes

265 Ind. 647, 358 N.E.2d 746 (Ind.1977). It appears from the defendants' reference to *Sims* that they are attempting to present a *Bruton* argument. In a joint trial, a statement of one co-defendant that facially incriminates another co-defendant may not be introduced against the other co-defendant, when the co-defendant providing the statement does not testify at trial or is not otherwise subject to cross-examination. *Bruton v. United States*, 391 U.S. 123, 136, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

*Bruton* defines "co-defendant" as one "who stands accused side-by-side with the defendant." *Id.* Despite the defendants' bald assertion, unsupported by citation to the record, that "Carnahan admitted to being a co-defendant," (Br. of Appellant at 10), it is not apparent how witness Carnahan stood accused "side by side" with the defendants at trial. *Bruton* accordingly does not apply.

We can discern no other cognizable argument by the defendants on this issue and therefore find no reversible error.

### 3. *Sufficiency of the Evidence*

■ Finally, the defendants complain that the State failed to prove beyond a reasonable doubt that they were guilty of attempted escape. In order to prove the defendants were guilty of attempted escape, the State had to prove Nicholson and Baker agreed with each other to commit the felony of escape, and that an act in furtherance of that agreement was committed. Ind.Code § 35–41–5–2. Specifically, they claim there was no "agreement" to escape shown, nor was there any evidence of their intent or that Nicholson committed an overt act in furtherance of an agreement to escape.

■ In reviewing sufficiency of the evidence, we will affirm a conviction if, considering only the evidence and reasonable inferences supporting the verdict, and without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Davis v. State*, 598 N.E.2d 1041, 1045 (Ind.1992), *cert. denied sub nom. Davis v. Indiana*, 510 U.S. 948, 114 S.Ct. 392, 126 L.Ed.2d 340 (1993). The evidence presented at trial indicated that Baker contacted Carnahan and asked him to contact McNeil, a lay minister who visited Nicholson frequently.

---

that decision to our supreme court, but offers us what appears to be a parallel citation to the *Maryland* supreme court reporter, "252 Md. 502." (*Id.* at 13.)

We direct counsel for Nicholson and Baker to Appellate Rule 22, which states that citations to cases in briefs are to follow the format put forth in the current edition of a Uniform System of Citation (Bluebook). When referring to specific material within a source, a citation should include both the page on which the source begins and the page on which the specific material appears. Uniform System of Citation Rule 3.3 (17th ed.2000). As we noted in *Barth v. Barth*, 693 N.E.2d 954, 956 (Ind.Ct.App.1998), *trans. denied* 706 N.E.2d 169 (Ind.1998) we will not, on review, search through the authorities cited by a party in order to try to find legal support for its position. We will consider assertions of error to be waived where an appellant's noncompliance with our rules is so substantial that it impedes our consideration of them. *Id.* at 957. We further direct counsel to our recent statement in *Howell v. Hawk*, 750 N.E.2d 452, 460 n. 3 (Ind.Ct.App. 2001): "We ask Appellants' counsel to renew his acquaintance with the Bluebook and our Rules governing citation to cases. Appellants' brief almost completely lacks pinpoint citations within the relevant cases cited, and includes numerous blank (wholly superfluous) citations to the Indiana Appellate Court Reports (Ind.App.), which ceased to exist after 1979. We prefer to resolve cases on the merits; nevertheless, we remind counsel that improper citation could amount to failure to make a cogent argument and result in waiver of our consideration of an issue, and such citation does not facilitate our review of the merits." (Citation omitted.)

Carnahan was to tell McNeil that he was going to drop off some Christian magazines for McNeil to take to Nicholson. When McNeil found the envelope allegedly containing the magazines, he opened it, finding baggies containing tobacco and a hacksaw blade. "Chris Nicols" was written on the envelope. The defendants seem to contend that Nicholson had no knowledge of Baker's or Carnahan's actions. However, McNeil testified that between the time Carnahan first called him to the time that the envelope was dropped off, Nicholson told McNeil that he was expecting some magazines. This is evidence sufficient to support the existence of an agreement between Baker and Nicholson.

With respect to the evidence of intent or an overt act, Baker testified that he asked Carnahan to give the Christian magazines, tobacco and hacksaw blade to McNeil to deliver to Nicholson. He testified that the hacksaw blade was not to be used to escape from the jail, but instead to break into the law library to liberate a stash of cigarettes that had been hidden there. The defendants' argument asks us to reweigh the evidence, which we will not do. *Id.*

Affirmed.

BAKER, J., and NAJAM, J., concur.