**Tommie Lee ROSS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 280S28.**

Supreme Court of Indiana.

Dec. 9, 1980.

Robert E. Marshall, Shelbyville, for appellant.

Theodore L. Sendak, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, Jerry J. Lux, Pros. Atty., Shelbyville, for appellee.

PIVARNIK, Justice.

Tommie Lee Ross was charged with Armed Robbery, Resulting in Serious Bodily Injury; Rape While Armed with a Deadly Weapon, and with being an Habitual Criminal. He pleaded not guilty and on August 28, 1979, a jury found him guilty of robbery and rape. On August 29, he was found to be an habitual criminal. Ross was sentenced to forty (40) years on the charge of Robbery Resulting in Bodily Injury and to forty (40) years on the charge of Rape While Armed with a Deadly Weapon, said sentences to be served concurrently. Ross was also sentenced to thirty (30) years on the finding that he was an habitual criminal, said sentence to be served consecutively, after he has served the determinate sentences of forty (40) years. He appeals.

Appellant raises issues for our review concerning his arrest and a search; the overruling of his motion for discharge, the destruction of radio dispatch records, the trial court's refusal to accept a plea agreement, the denying of a motion to dismiss, the court's refusal to give certain instructions and a claim of double jeopardy in regard to his being sentenced as an habitual offender.

On June 20, 1978, at 2:00 a. m., Robert Belles, deputy sheriff, stopped a black over yellow Ford LTD which had the prefix 18 E on the license plate and which contained three black men. The car had been following him closely and the driver had not dimmed the lights. Belles had to tell the men to stay in the car. The driver gave the name Wilford Ross, but did not have a driver's license. Ross was "acting strange." One of the other men said he would drive and Belles released them, noting that the Ford name on the car was missing the letter "D".

At 3:09 a. m., Belles heard from radio dispatches that Shelby City Police were called to a Hooks Drug Store on South Harrison Street. The cashier, C. W., had been raped and an armed robbery had been committed by three or four black men. Belles was called to the Hooks store and remembered stopping the three men in the LTD. Subsequently, the Indiana State Police put out a radio dispatch for three or four black men in a white over yellow Ford LTD automobile with 18 E prefix plates.

The cashier at Hooks, C. W., had seen two men walking toward her, one was taller than the other and had hair on his face; the other was stockily built. The taller one had a gun in his hand and both pulled stockings over their faces. The pharmacist was in the restroom and a third man ordered him to come out. Everyone else in the store was then put in the restroom. Appellant Ross ordered the cashier to stand in front of him. He had a knife and a gun. He then took her to the cash register, removed the money and ordered her to pull down her pants; she refused and he put the gun to her neck. She pulled down her pants, lay down and he raped her. C. W. identified appellant Ross at a lineup the following day as the man who had raped her.

Sayne Tanner, the pharmacist, testified that he was in the bathroom and that someone pounded on the door. He opened it and faced a gun held by one man. They proceeded to the safe, opened it, and removed the money. Money was also taken from the cash drawer and the money order drawers. The other man opened the narcotic drawer and all of the narcotics were taken and placed in two waste baskets. One man ran out of the front door and the other man was taken to the back door. There were three men in the store. They all wore stocking masks.

Soon after the incident at Hooks, Indiana State Policeman Dan Logsdon observed a Ford travelling north on I-65 in Johnson County. Hand radar showed a speed of sixty-nine miles per hour. The car also matched the description in a radio message concerning an armed robbery in Shelbyville.

It was dark over yellow Ford with 18 E license plates. Logsdon requested assistance, as there were three subjects in the car, and then stopped the car. The driver produced a license for Walter Murphy. Assistance arrived and all three subjects were ordered out of the vehicle. Belles went to the scene and identified the car and its occupants as the ones he had stopped earlier. A gun was observed on the front floorboard on the passenger side. Elmer Douglas was in the front seat passenger side and Tommie Ross, the appellant, was in the rear seat of the car. After the gun was observed, the trunk was opened and two plastic wastebaskets containing a large quantity of drugs, a cut-off stocking and a large sum of money were found. The car was impounded and an inventory made. A pistol was found on the rear window deck and some cash was found in the rear seat.

### I.

Appellant Ross alleges that there was no probable cause to support his warrantless arrest and the subsequent search of the car. He also claims that the trial court erred in overruling his Motion to Suppress the Evidence and in admitting the items seized in the search.

Trooper Logsdon stopped the car in which appellant was riding because he had a radar reading of sixty-nine miles per hour on that car. In addition, the car matched the description of one used in an armed robbery in that it was a yellow LTD and had 18 E prefix plates on it. Three men were visible in the car although one attempted to duck down in the seat and hide. Probable cause has been defined as facts and circumstances known to the arresting officer which would warrant a man of reasonable caution and prudence in believing that the accused had committed a criminal offense. *Gaddis v. State*, (1977) 267 Ind. 100, 368 N.E.2d 244, 247; *Patterson v. State*, (1979) Ind., 386 N.E.2d 936 at 939. The facts known to Trooper Logsdon together with the misdemeanor committed within his view gave sufficient probable cause to make a stop of the vehicle. *Taylor v. State*, (1980) Ind., 406 N.E.2d 247.

After the vehicle was stopped and the passengers got out, a gun was observed on the front floorboard, a pistol was found on the rear window deck and some cash was found in the rear seat. Plastic wastebaskets containing drugs, money and a cut-off stocking were found in the trunk. An automobile may be searched without a warrant under circumstances where there is probable cause to believe that the car contains articles that officers are entitled to seize. *Chambers v. Maroney*, (1970) 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; *Isaac v. State*, (1970) 257 Ind. 319, 274 N.E.2d 231. Here the officer had probable cause to stop the vehicle, observed the gun, and had a description of the vehicle and the men police were seeking. There was probable cause to believe that this vehicle contained articles that police were entitled to seize. There was no error in admitting the seized items into evidence.

### II.

Appellant next claims that it was error for the trial court to deny his motion for discharge which was based upon the fact that he had been held in confinement for a period of two hundred twenty-seven days before being tried. Ross was arrested on June 20, 1978, and an information was filed on June 21, 1978. Trial was commenced on August 22, 1979. Delays were had due to the granting of continuances, change of judge and other matters, but it appears that within this time period there was a delay of over six months between the time of his being charged and his being tried.

Criminal Rule 4(A) of the Indiana Rules of Criminal Procedure provides as follows:

No defendant shall be detained in jail on a charge, without a trial, for a period in aggregate embracing more than six (6) months from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge (whichever is later); except where a continuance was had on his motion, or the delay was caused by his act, or where

there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last–mentioned circumstance, the prosecuting attorney shall make such statement in a motion for continuance not later than ten (10) days prior to the date set for trial, or if such motion is filed less than ten (10) days prior to trial, the prosecuting attorney shall show additionally that the delay in filing the motion was not the fault of the prosecutor. Any defendant so detained shall be released on his own recognizance at the conclusion of the six–month period aforesaid and may be held to answer a criminal charge against him within the limitations provided for in subsection (C) of this rule. Appellant contends that the overruling of his motion for discharge impaired his ability to cooperate with his counsel in the preparation of his case for trial and that he was thereby prejudiced. However, he does not specify in what way he was impaired from cooperating with his counsel.

It is clear that this ruling was in error and that the defendant was entitled to be released on his own recognizance after the six–month period had expired. However, he was not entitled to discharge. The State was authorized to bring him to trial and this error does not require reversal. *Collins v. State*, (1977) 266 Ind. 430, 364 N.E.2d 750 at 755; *Carpenter v. State*, (1978) Ind.App., 378 N.E.2d 908. *See also Lewis v. State*, (1976) 264 Ind. 288, 342 N.E.2d 859.

### III.

■ Appellant next alleges that he was denied due process in regard to certain radio dispatch tapes. On June 27, 1978, the appellant filed his motion for discovery. On July 20, 1978, he filed his amended motion asking for the radio tapes which were made before the arrest of the appellant on June 20, 1978. On August 21, 1978, the State filed its Answer alleging that the tapes were retained by the Indiana State Police for a period of thirty (30) days, and then they were reused and that therefore tapes were not available of dispatches made

on June 20, 1978. The dispatches in question would have been reused by the time the Motion was filed on July 20, 1978. Radio dispatch cards showing times of dispatches and radio dispatch log reports showing the times of the dispatches in connection with the robbery at Hooks Drugs were supplied. Appellant Ross claims that it is possible that the tapes could have contained information that would have convinced the judge to grant his motion to suppress the evidence seized in the arrest and that, therefore, there would have been no evidence to convict him.

We have already determined that the evidence seized was properly admitted. Officer Logsdon testified at trial as to the dispatches and their content, as did other witnesses. All were subject to cross examination. Discovery in criminal cases is largely a matter within the discretion of the trial court. *Gutierrez v. State*, (1979) Ind., 395 N.E.2d 218, 223. There is no error here in a failure to provide that which does not exist. Generally, the sanction to be applied, if one were applied, would be the exclusion of the evidence at trial. See generally, *Cochran v. State*, (1978) Ind., 378 N.E.2d 868. Here the tapes were not admitted and the witnesses who testified concerning them were available for cross examination. The content of the tapes related to probable cause to stop and arrest, and was not evidence that would convict or acquit. There is no error on this issue.

### IV.

■ The appellant next argues that the court erred in not accepting a plea agreement. Under the agreement, the defendant was to plead guilty to rape and receive a sentence of forty (40) years imprisonment and the State was to dismiss the robbery and habitual criminal charges. The State prepared its recommendation for filing. However, Ross claims he stated to his attorney that he could not testify that he did commit the rape nor could he give evidence as to the facts surrounding the rape. He maintained he did not commit the offense, but recognized that the evidence against

him was so strong that there was little chance of acquittal.

The Order Book Entry of the proposed plea agreement reads as follows:

"THAT AFTERWARDS, to—wit, on the 20th day of August, 1979, the following further proceedings were had in said cause by said Court.

State of Indiana appears by Jerry Lux, Special Prosecuting Attorney, Shelby County. Defendant, Tommy Lee Ross, appears in person and by counsel, Robert Marshall. State of Indiana submits plea bargain agreement to defendant for examination. Counsel for defendant advises the Court that the defendant Tommy Lee Ross, does on this date refuse to accept bargain and agreement. The Court advises parties that this cause is set for trial by jury Wednesday, August 22, 1979 at 9:00 A.M. Notice to Jerry Lux; Robert Marshall."

This record reflects that the plea bargain agreement submitted was rejected by the defendant, Tommy Lee Ross. There is no error in the court's setting this cause for trial after Ross refused the agreement.

### V.

Appellant contends that the court erred in denying his motion to dismiss and for refusing to give an instruction related to his being found to be an habitual criminal. Of the prior felonies involved in the finding, one was a prior conviction for carrying a pistol without a license on January 18, 1972. Appellant argues that since the Indiana Legislature has now provided that this offense is a misdemeanor rather than a felony, and that it would have been a misdemeanor at the time of the commission of the present rape and robbery, it cannot now be used as a prior felony for purposes of the habitual criminal proceedings. He claims that to hold otherwise denies him equal protection and due process.

Appellant's argument is without merit. The determination of whether or not an offense is a misdemeanor or a felony is based on the law at the time of the commission of the act. Prior unrelated felony convictions are viewed as they existed at the time they occurred for habitual criminal proceedings purposes. *Wise v. State*, (1980) Ind., 400 N.E.2d 114. Therefore, it was not error to overrule appellant's motion to dismiss or to refuse to give the instruction appellant requested, i. e., that at the present time, the law of Indiana is that carrying a handgun without a proper license constitutes a Class A misdemeanor.

### VI.

Appellant also claims that the court erred in refusing to give his tendered final instructions numbered 2, 3, 4 and 7. These instructions related to associating, aiding or abetting others in the commission of an offense; reasonable doubt, and reconciling conflicts in the evidence. We have examined these instructions and the ones given by the trial court. All of the areas which were covered in appellant's tendered instructions were areas which were fully covered by the court's instructions numbers 14, 9, and 5. The court's instructions were lengthy and thorough on the subjects. There is no error in the court's refusing to give tendered instructions the subjects of which are covered by other instructions given by the court. *Lynn v. State*, (1979) Ind., 392 N.E.2d 449, 452; *Murphy v. State*, (1977) Ind., 369 N.E.2d 411, 417.

### VII.

The trial court imposed an additional ten (10) years on each of appellant's sentences for robbery and rape. Among other reasons given for aggravation was his prior criminal record. Appellant argues that because his prior criminal record was considered as one of the reasons for aggravation, and he was found to be an habitual criminal, which also included consideration of his having prior felony convictions, his punishment violated the proscription against double jeopardy. He claims that this amounts to double punishment for the same felonies.

The court at the time of sentencing on the first offense made the following findings:

"The Court having reviewed the evidence in the case and having reviewed the presentence investigation and report filed by the Bartholomew County Probation Department finds that no mitigating circumstances exist with respect to the punishment that should be imposed in this cause. The Court further finds that the following aggravating circumstances exist with respect to punishment: 1. That the defendant has violated conditions of parole. 2. That the defendant does have a history of criminal activity. 3. That the defendant is in need of correctional treatment, which should be provided by his commitment to a penal facility. 4. That imposition of the sentence recommended by the Legislature for a Class A felony would depreciate the seriousness of the offenses in this case. 5. And that because of the existence of these aggravating circumstances that the defendant should be sentenced to a determinate sentence of forty (40) years on Counts I and II of the information.

It is clear that the appellant was not given double punishment for two specific felonies, but that his history of criminal activity, which dated from 1968, was but one factor the trial court considered in sentencing, as is proper under the statute. The habitual criminal proceeding and sentencing does not violate the prohibition against double jeopardy. *Wise v. State*, (1980) Ind., 400 N.E.2d 114.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.